Last case for argument is 151754 IPCOM v. HTC Corporation. This case deals with a handshaking subroutine to enable the mobile device to gain access to the communications network. It doesn't cover anything that happens on the communications network or the RACH after permission to access the RACH has been granted. The invention introduces an additional or alternative path to gain access to the RACH that isn't present in the prior art. The PTAB erred in misconstruing the claim limitation present in all the claims of right of access to include activity that occurs after access has been granted. Under the proper construction of right of access, the case should be reversed because the prior art only discloses a single path to access the RACH. We have a second basis for reversal on Claim 26, construction of on the basis of. However, if the Court agrees with our construction of right of access, you need not address that. On the right of access, okay, the Board acknowledged that it's doing as far as reasonable interpretation and this is a re-exam so nobody is disputing that they have the right to do that. So their analysis was the claims don't say whether the right of access includes, is limited to initial permission and that it might include the ability to transmit messages over the network at any time, right? What's wrong with that? I mean, there is no limitation in the specifications, I can see. There is no limitation specifically to the word initial. However, when you read the claims in the context of the specification, the claims are limited to analysis of data that is transmitted over the BCCH 25, which is the control channel, and they stop prior to any type of authorization or at authorization to transmit over the RACH, which is 35. Don't they include the first request for access and also subsequent requests to transmit the messages over the network? They don't include subsequent requests to transmit over the network after access has been granted, and you can see that in the flow charts at 4A through 4C. They stop once access has been, either access is denied... When you say they don't include it, do you mean they don't expressly include it or they expressly state against it? When you look at... You have this broadest reasonable construction problem. Yes. And there is nothing that negatives the issue of whether it includes something after the initial transmission. Am I correct about that? I think the specification, the claims under broadest reasonable construction have to be read in light of the specification, and the specification is limiting the invention of the embodiments. Even though we're covering embodiment two, both of the embodiments are limited in the specification to this initial handshaking that occurs once... How do we know that, though? I mean, the claims refer generally, it seems to me, to granting the right of access to the rash, or that they say that access to the rash is enabled and can be granted. So how is it so clear to you that we're just dealing with this initial access? Because when you walk through the flow charts, which track the limitations of the claims, the flow charts do not cover what may happen after grant of a right of access, and the grant of a right of access. But can you show me what's in the spec, just the description of the preferred embodiments or the summary of the invention, what we would look to to say that it's only the initial access and that it doesn't include the other stuff? Yes, Your Honor. What's the best thing that makes your point in any of the specifications? First of all, if you look at Figure 1 at A1069, Figure 1 shows that the Base Station 100 is transmitting over the BCCH to the first subscriber station. That's what's going on in the claims. Well, this is just one embodiment, right? This is the embodiment that's claimed. I can take you to the claims and show you where it's discussing that type of transmission. Well, I'm looking at the discussion in the specification of Column 3 about Figure 1. Column 3, Your Honor, which, where are you looking? You were referring to Figure 1, and the description of Figure 1 in the specification appears at Column 3. As far as I can tell, you're not wrong about that. No, that's correct. And Figure 1 covers a lot of different things, but when you read the claims, Figure 1, the part of Figure 1 that the claims are addressing, which are further addressed in the flowcharts for A through C, is this initial access. And that is disclosed starting at Column 8, Line 6, the second exemplary embodiment. And starting at Column 8, Line 64, they walk through the flowcharts about the initial access without granting an initial, well, granting a right of access. Okay, so this is a second embodiment that has this. I mean, why would the Board, under the broadest reasonable interpretation, be limited to what's expressed in those flowcharts in that second embodiment? Because the intrinsic evidence of the spec, and even under BRI, you have to consider that even though the claims are explicitly limited to the second, both embodiments are only talking about the initial right of access after analyzing the data on the BCCH. I'm trying to find the claim language here. So what is the, there's nothing in the claim language, what is it in the claim language that guides you to saying that we're only talking about the initial request? So the telecommunications channel, let's look for example at, here we go, so the telecommunications channel at Column 11, Line 29, transmits information signals to the subscriber station. And those information signals have this bit pattern, which is 13 bits. You can relate that by going and looking at the numbers in the claims and back to the figures. The transmission is from the telecommunications channel network to the subscriber station, which means under Figure 1, that's a control signal that's being transmitted to the subscriber station saying, here is your information about what types of access you have. It's not a transmission over the ratch, which would be data or voice, and which uses a lot more power and a lot more resources. When you're transmitting over the BCCH, you're in what's called packet idle mode. And in packet idle mode, you're preserving resources, you're just analyzing the information coming to see what your rights are. Once access is granted, and this is disclosed in the prior ART GSM reference, which also distinguishes between prior to a grant of access and a grant of access, once access is granted, the mobile station enters packet transfer mode. And packet transfer mode, resources are allocated for it to attempt to transfer on the network. We're not talking about packet transfer mode. We're sitting in packet idle mode. And we're looking at the resources. And the difference is, this describes two pathways to get on to the network to begin with. And they're alternative. You could go one or the other, or they're additional. You can go one and then the other. But it allows for a volume control to be put on network congestion, which isn't available in the prior ART. Do you want to cover 26 briefly? Sure. Thank you. Claim 26 has the additional requirement for on the basis of. And the PTAB interpreted on the basis of to be basically on the basis of anything. However, if you're going to analyze on the basis of, and you need to look first at the flowcharts, and look at column 9 at 1076, lines 62 through 67. Column 9 says, if you're going to analyze on the basis of that at program point 285, on the basis of access channel bits. So here's what you're doing. The evaluation unit asks whether there's a user class. So first it's saying, hey, can I get on because I'm a member of a loud class? What line number are you at? I'm so sorry. I'm at line 62 through 67. I'm sorry, Your Honor. Thank you. At program point 285, the basis, it says, on the basis of access channel bits. So that's the key language. It looks at the bit pattern, and it says, am I a member of a class? And then it says, if so, I go to 245, and 245 grants me access to the RACH, and it gives me resources to attempt to transmit. Then it says, if I'm not a member of this authorized class, I go to 210, and this is what's different from the prior art. If you go to 210, you get to attempt to access the RACH using ATV analysis. Either you are able to get on using this analysis, or the program happens in this program, or the claims do not cover and the spec does not identify what happens after access to the RACH is granted. This is distinct from the prior art, the prior art GSM reference. Specifically, first, it two separates pre-access and post-access, but it also says at 7.1.2.1, that if I'm a member of a class, once you've gained access, and you can only gain it based on access class barring, not the alternative method we claim, but once access is allowed, then at 7.1.2.1, you leave packet idle mode, and you attempt to transmit on the RACH. This is not anything that we have covered, because we never get to the point where you leave packet idle mode. In addition, this is different from, and I realize I'm in my rebuttal, be quick, this is different from the persistence control disclosed in the GSM, because persistence control comes in again while you're in packet transmit mode. You've passed an access class barring test, and access to persistence control only happens when you pass an access class test, and then you fail on your initial attempt to transmit. We don't cover that. The closest distinction is we use an ATV comparison only when you fail the access class test, not when you pass it. I'll reserve the rest of my time, Your Honors. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. My name is Michael Loveland on behalf of HTC. I'd like to address the first point that IPCOM made about whether there's initial access somehow limited in the patent specification. Not only is there no mention of initial anywhere, but that construction, Your Honors, is directly inconsistent with the teaching of the 751 patent. If you look at column 5, line 20, it says, before each access to the RACH by the first mobile station, the evaluation unit draws a random or pseudo-random number, R, and asks whether the random or pseudo-random number, R, is at least as great as the access threshold value. Only then is access to the RACH allowed. So what they're saying is, we're contemplating that there's going to be more than one access request that's going to be necessary, and this patent is not limited to the initial access request. The first thing that IPCOM had said is, this patent and this technology is directed to a handshaking routine. That came up for the first time in their reply brief. That's wrong. It's important because it's a fundamental difference between what access is in cell phone technology and what handshaking is in cell phone technology. Handshaking means that the cell phone sends a request for something to the network, and the network sends an acknowledgment back. That's the handshake. They agree. Nice to meet you. We're in agreement. That can't work when it comes to access because the cell phone isn't allowed to transmit anything until it makes a determination that it has a right of access. It has to do that on its own. How does it do that? It takes information that's broadcast from the network, and then on its own, it makes the determination as to whether or not it can make an access attempt. Then it tries, and it might fail. If it fails, then it can't automatically try again. It's going to have to do some routine again to see if it has permission. Every time that the phone transmits on a shared common resource, it has to make a determination, am I allowed to do this? That was what the board was saying, whether it's the initial access or subsequent access, that's all part of access. That's expressly contemplated by the 751 patent because they're saying before each access. Then later on, they have a part where they say, for further relief, we could talk about having a repetition counter, or we could have some scheduling type of thing. Why? Because when the phone tries to transmit, it might not go through. It might not go through because the channel was overloaded. It might not go through because he was in a garage, and the signal never made it. The phone doesn't know why. All the phone knows is, shoot, I never got any response. I'm going to have to make a determination as to whether I can try to access routine. In the claim destruction part, and IPCOM seems to be going back and forth between claim destruction and what should be reviewed under substantial evidence. I want to make that clear. IPCOM first argues that, this is on their blue brief at page 39, the right of access means the threshold determination of whether a subscriber has permission to access the channel and attempt to transmit. And then, in their reply brief, they say, and this is at page 22, properly construed, right of access means a determination by the subscriber station whether it is permitted to access the channel. They took out the word threshold. They said threshold determination first, then they took it out. They took it out because it doesn't belong there. There's no threshold determination. What happens is, every time the cell phone has to make a determination, once it determines that it can attempt to transmit, it will do so. And if it didn't work for some reason, then it has to go through another routine. Okay. So, getting to some of the other issues that IPCOM raised. IPCOM has this theory that the patent is about preventing overload, whereas the GSM reference is about relieving overload, and that that's some distinction, which is never made in the patent. But I also want to note that it was not made by IPCOM to the board. In fact, they said the opposite. During reexamination, and this is at A3163, they said, the embodiments disclosed and the features claimed in the patent relate to reducing, by way of a special access mechanism, channel overload. Reducing doesn't mean preventing. And that's because this patent isn't about preventing. There's nothing in here that guarantees that you're going to prevent access from happening. In fact, it's quite the opposite. What the patent is showing is, you try to get access by checking your class, whether you're one of the privileged class to get in. The network doesn't know how many people are trying to get in at a given moment who are all part of that class, so the network can't prevent it. All the network can do is control to try to reduce it. Well, it looks like we're getting a lot of requests from class one these days. This is too many for this minute. Let's start tampering it down. That will help control the traffic. But they don't know whether they're preventing it or relieving something that's already overloaded, and the cell phone definitely can't know that. All the cell phone knows is I made a determination that I can try, now I'm going to try. And if I get something back from the network, great, I'm in business. And if I don't get something back from the network, what am I going to do to try again? And that's what's taught in the GSM reference. In the GSM reference, what's happening is, it first goes on by doing this access class test, and then it tries to make an attempt. It has access, so it tries to make an attempt. If that attempt fails, now what's it going to do? It doesn't have to go back to the beginning. It just does the random number test, which is the exact same random number test that is disclosed in the 751 patent and claimed in the 751 patent. Your Honors, in the blue brief, it mentions over 29 times, on 24 pages, that a distinction between the 751 patent and the GSM reference is that the GSM reference has persistence control, whereas the patent is ATV, access threshold value. And they keep saying persistence control, because I would be happy to give you the list of every single place where they say it. But to cut to the chase, let's look at the one that's in their figure that they provide. I think it's on page 15. So if you turn to page 15 of the blue brief, you'll see a misrepresentative chart of what actually happens in the standard. And what they're showing here is that you go through the access class test. That, they admit, is the same. And then they have this gray line, and they say, ta-da, access granted. And then after that, then you make an attempt to transmit, and they say if there's a failed transmission, just do persistence control. It's not just persistence control. If you look at the standard, and I direct your attention to A4340, there's no such thing as persistence control. At A4340, three quarters down the page, 7.1.2.1.1, this is the standard. And it says access persistence control on PRATCH. This is access control on the random access channel. It's the very thing that is covered by the patent. And it's done the exact same way as the patent. You download a number, and then you generate a random number in your phone, and then you compare the two. And if you're greater than it, then you get to try to transmit a message. And if you lose, then you're going to have to wait for the next time they send out a number, and then you'll try again. And you never know when your random number is going to be big enough. Which gets to the other problem. IPCOM argues that the access persistence control is not about access, it's just about scheduling. And that's not access because you already had access. Yeah, you had access, but then you lost it because you tried a transmission and it failed. And so now you're trying again. You've got to get access again. It really is like the analogy of being at a deli counter. If I'm at the supermarket at the deli counter, I'm going to pick a number, and that's going to tell me when I get to order my turkey breast. And I'm not doing any tests. It tells me, you're next, or you're going to be two times from now. That's merely scheduling. There's no testing done. But in the standard, you don't just pick a number, it downloads a number, you compare it with a random number, and you perform that test. And until you pass that test, you don't get to transmit. That's access. Now, IPCOM talked about, well, there's a difference between, in the standard we're talking about a packet channel request, and then we're going to boost the power within the cell phone. None of that was raised before the board. And this issue about whether this is teaching constitutes access really should be reviewed for substantial evidence. This was already argued in front of the examiner. The examiner said it's access. It was then argued in front of the board. The board said it's access. And then they petitioned for re-hearing. And then the board issued another decision and said, we're absolutely confident that there's no distinction between initial access and subsequent access. And what's taught here, they said, is exactly the same. Whether you want to call it access threshold value, which is what they say in the patent, or whether you want to call it access persistence control, which is what they say in the standard, it's not different just because the words are different. It's what's done. It's the exact same thing that's done. In the inter-parties re-exam, I just want to read it. This is at A3060. This is where the examiner made this decision, made this determination. The examiner said, additionally, the patent owner spends considerable time discussing so-called persistence control in the cited prior art. And then he puts in parentheses, it should be noted that access persistence control is merely another form of granting a right of access. The claim language does not define the timing or duration of the right of access grant. And then he says, the cited prior art states, as indicated above, a procedure for giving a right of access to a channel using a comparison between an access threshold value and a random number. This is what the claim requires. This is what the March 1998 GSM specification discloses. It is word for word by the examiner, and it was resolved. Moving on to the on the basis of. The primary argument by IDCOM is that there's a distinction between the GSM reference and the 751 patent. And that the GSM reference shows a linear pathway. You first have to pass the access class test. And then once you pass that, then you've got to pass this access persistence control, the random number test. Whereas, so you've got to get both done. Whereas in the 751 patent, in the preferred embodiment of the disclosure, it's alternative. You first try the access class test. If that fails, okay, try the random number test. And if that gets you in, then you're okay. Then you can try to attempt a transmission. That's its distinction. We don't disagree. That is a different embodiment. And what the GSM reference teaches, what matters is whether that's relevant to the claim. And the claim language says, just on the basis of the access class bits, ask whether these access threshold value bits were transmitted to perform the random number test. On the basis of. So what does on the basis of mean? Well, IDCOM argued in their reply brief that it means you had to have failed previously. That's not what, if you wanted to say you had to fail, put that in the claim. They added claim 26 during re-exam. They added it in the face of this priority. If they wanted to be clear, they should have been clear. What's interesting is that in their blue brief, they took a different position. They said, based on the plain meaning of that language, that asking depends on the information encoded in the access class data. It depends on what was provided. Throughout their briefing, they keep saying, well, the board was wrong because all the board said is you first have to get access class data, and that's all that matters. And that can't be that. It has to be more than just getting it. It has to do something with it. Well, you do do something with it. What happens is, in the GSM standard, you first have to take a look at the access class bits that you got. You have to do a test. Did I win? If I win, then I go on to the next test. So it's on the basis of it. In the patent specification, it's the opposite. I take those access class bits. Did I win? No, I lost. Okay, because I lost, I'm now going to do the access threshold value test. They're both on the basis of, they're both dependent from, they're just dependent from them in a different way. And if they wanted to claim that, they should have claimed that. Let's see if there's anything else to adjust here. I guess the one other thing is just getting to this point about going back to the initial access. Your time's almost up. All right. If there aren't any questions, I won't go into something else. Thank you, both of you. Thank you all very much. Your mention of Turkey at the deli has been very difficult for me because it's lunchtime. Yes. Very often, it's my turn. Thank you, Your Honors. So this case is going to turn on whether read in light of the specification the claims are limited to right of access and what happens before that. And we agree with what HTC said. The cell phone isn't allowed to transmit anything until access is granted. And we also agree with what HTC said, that substantial evidence controls interpretation of the GSM standard. The PTAP said, with respect to the GSM standard, and this is at A14, access is initially granted by class barring techniques. And then subsequent access, in the event of a collision, is determined by random number comparison. That's not what we have here. That's not what's claimed. Specifically, the method, access would initially be barred before the ATV test would be accomplished in ours. Because the test, regardless of whether it's the same as persistence control, is only run when the access class test fails. Looking to the before each access in column 10, line 20, that HTC pointed to, that is also not part of embodiment 2. And by reading the limitations of our claims, they are limited to embodiment 2, which starts at column 8, line 6. But even under the broadest reasonable interpretation, because we are specifically limited to this second embodiment, before each access does not apply. And finally, I see I'm short on time, our repetition counter that HTC referenced at column 10, 24 through 38, that's a legal error of the board, because they didn't read the plain language of the spec, which says that this repetition counter only happens if there is a collision, and if they have to resend the message, not prior to sending the initial message. Thank you, your honors. Because this case covers activity that is pre-access to transmission on the channel, and it can do it again pre-access after it leaves that access granted mode, this case should be reversed. The prior art only has one path of access and ours has two. Thank you. Thank you. We thank both sides of the case as submitted. That concludes our proceedings.